[Cite as *State v. Tripodo*, 2026-Ohio-2695.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO | Case No. 2025CA00138 |
| Plaintiff - Appellee | Opinion and Judgment Entry |
| -vs- | Appeal from the Canton Municipal Court, Case No. 2025 TRC 4090 |
| CARRIE ANN TRIPODO | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment Entry: July 13, 2026 |

**BEFORE:** William B. Hoffman; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** Jason P. Reese, Canton Law Director, Krissy Lockwood, Canton City Prosecutor, for Plaintiff-Appellee; Mark Ziccarelli, for Defendant-Appellant.

*Hoffman, P.J.*

{¶1} Appellant Carrie Ann Tripodo appeals the September 11, 2025 conviction entered in the Canton Municipal Court on one count of Operating a Motor Vehicle While Under the Influence (OVI), R.C. §4511.19(A)(1)(a), following a plea of no contest. Appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}　　On July 10, 2025, Appellant Carrie Ann Tripodo was charged with Operating a Motor Vehicle Under the Influence (OVI), in violation of R.C. §4511.19(A)(1)(a), and BAC, in violation of R.C. §4511.19(A)(1)(h), which prohibits alcohol consumption in excess of 0.17, both first-degree misdemeanors.

{¶3}　　On July 15, 2025, Appellant entered a plea of not guilty on both charges.

{¶4}　　On August 5, 2025, Appellant filed a motion to suppress, asserting the State lacked reasonable and articulable suspicion to test her for impairment after a domestic dispute investigation was completed, and therefore there was no probable cause to arrest her for operating a vehicle under the influence.　On August 26, 2025, the trial court held a hearing on Appellant's Motion to Suppress. At the hearing, the trial court heard the following testimony and evidence:

{¶5}　　On July 9, 2025, around 7:02 p.m., 9-1-1 Dispatcher Kelcey Showalter received a call from Eric Carnes, reporting an ongoing domestic dispute with his girlfriend, Appellant Carrie Ann Tripodo. (Supp. T. at 5). Dispatcher Showalter testified she asked the caller to separate and go into a different room from Appellant. Ms. Showalter stated the caller told her Appellant was throwing items, struck him with a television and left with his keys. Ms. Showalter testified the caller informed her Appellant had been drinking and shouldn't be driving. The caller then told her Appellant left the apartment, got into her Blue Cadillac, and drove away. (T. at 6-7). The caller informed the dispatcher Appellant was heading down Hillcrest Avenue. (T. at 6-7).

{¶6}　　Detective Matthew King of the North Canton Police Department testified he was on patrol, in uniform and in a marked cruiser, when he responded to the 9-1-1 call. He

was on his way to the dispute when he was advised the female was leaving the residence and was headed westbound toward Portage Street in a blue Cadillac. (T. at 13). Det. King spotted the blue Cadillac at a roundabout on Portage Street and Hillcrest Avenue and initiated a traffic stop. (T. at 13). Upon approaching the vehicle, Det. King detected an odor of alcohol coming from the vehicle. (T. at 14). While speaking with Appellant, Det. King testified she had bloodshot and glassy eyes but acknowledged she had also been crying. (T. at 36). Det. King then asked Appellant for her driver's license. (T. at 14). Det. King testified Appellant overlooked her license twice before he pointed out the license on the third pass in the stack of credit cards. Id. Det. King also noted Appellant had slurred speech and admitted to having a drink at the bar. (T. at 18).

{¶7} Detective King stated he was informed by another officer at Carnes' home Appellant had more drinks than she admitted, and she hit Carnes with a television set before she left. (T. at 16.) Appellant got out of the vehicle to show officers the television set in the trunk. (T. at 17). As she was exiting her vehicle, Det. King noticed she was unsteady on her feet. (T. at 18). Officers asked Appellant if she had Carnes' keys, which she denied. Id. Det. King eventually discovered Appellant did in fact have two of his keys. (Judgment Entry at 2).

{¶8} While out of the car, Detective King continued to observe the odor of alcohol coming from Appellant's person. Id. Upon completion of his domestic dispute investigation, Det. King began investigating Appellant for operating a vehicle while intoxicated (OVI) based on the observed indications and report of impairment. (T. at 17).

{¶9} Det. King also testified he has been an officer with North Canton Police Department since January, 2019, and has been involved in over 500 OVI investigations. He has forty (40) hours training in OVI detection through the police academy, along with

advanced training in Alcohol Roadside Impaired Driving Enforcement (ARIDE) and Drug Recognition Expert (DRE).

{¶10} As a result of his investigation, Detective King arrested Appellant charging her with OVI and BAC. (T. at 21).

{¶11} The trial court denied the motion to suppress, finding there was a sufficient basis to detain Appellant for an OVI investigation based upon the arresting officer's reasonable and articulable suspicion Appellant was intoxicated.

{¶12} On September 11, 2025, Appellant entered a plea of no contest to OVI under R.C. §4511.19(A)(1)(a). Based on her plea, the trial court found Appellant guilty, dismissed the remaining charge, and sentenced Appellant to 180 days jail with 177 days suspended on condition she complete a three-day driver intervention program, and serve two years probation. The trial court granted a stay of sentencing for purposes of appeal.

{¶13} Appellant appeals the September 11, 2025 entry raising the following errors for review:

ASSIGNMENTS OF ERROR

I. THE TRIAL COURT ERRED WHEN IT FOUND THAT THERE WAS A BASIS TO CONTINUE THE TRAFFIC STOP AFTER THE DOMESTIC DISPUTE INVESTIGATION WAS COMPLETED AND THEREFORE THE CONTINUED DETENTION OF DEFENDANT VIOLATED DEFENDANT'S RIGHTS UNDER THE 4TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

II. THE TRIAL COURT ERRED WHEN IT DETERMINED THERE WAS REASONABLE SUSPICION TO DETAIN THE DEFENDANT AFTER THE INITIAL TRAFFIC STOP TO INVESTIGATE FURTHER.

III. THE TRIAL COURT ERRED WHEN IT RULED THAT THE DETECTIVE'S REQUEST TO PERFORM FIELD SOBRIETY TESTS WAS REASONABLE.

I., II., III.

{¶14} In each of her assignments of error, Appellant argues the trial court erred in denying her motion to suppress. We shall therefore address Appellant's assignments of error together.

Motion to Suppress

{¶15} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 1995-Ohio-243; *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside* at ¶ 8. However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. Id., citing *State v. McNamara*, 124 Ohio App.3d 706, 707 (4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266 (2002); *Ornelas v. United States*, 517 U.S. 690 (1996). That is, the application of

the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas* at 697. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 698.

{¶16} It is pursuant to this standard we review Appellant's assignments of error.

{¶17} Appellant argues the trial court erred in finding Detective King had reasonable, articulable suspicion to continue the detention of Appellant and to request she perform field sobriety tests once his investigation concerning the domestic dispute had concluded.

{¶18} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357 (1967). A police stop of a motor vehicle is a significant intrusion requiring justification as a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

{¶19} A police officer may stop an automobile for investigation where the officer has an articulable and reasonable suspicion that the motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law. *State v. Chatton*, 11 Ohio St.3d 59 (1984), cert. denied, 469 U.S. 856 (1984), citing *Delaware v. Prouse*, supra. The investigative stop exception to the Fourth Amendment warrant requirement permits a police officer to stop an individual provided the officer has the requisite reasonable suspicion based upon specific, articulable facts that a crime has occurred or is imminent. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In evaluating the propriety of an investigative stop, a reviewing court must examine the totality of the circumstances that provided the foundation for the officer's suspicion to warrant an inquiry. *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988).

{¶20} In order to determine whether Detective King had a reasonable suspicion justifying the stop of Appellant's vehicle, we must determine whether the information conveyed to the deputies was sufficient to provide a reasonable and articulable suspicion.

{¶21} Det. King stated at the suppression hearing he stopped Appellant's vehicle based on the 9-1-1 call placed by Mr. Carnes. The Ohio Supreme Court has acknowledged a tip called in by an informant can serve as the sole basis for an investigative stop if the tip has sufficient indicia of reliability. *Maumee v. Weisner*, 1999-Ohio-68. In order to assess the value of an informant's tip, a court must consider the informant's veracity, reliability, and basis of knowledge. Id. at 299.

{¶22} The category into which an informant is classified is relevant in determining his veracity, reliability, and basis of knowledge. Id. at 300. Ohio courts have recognized three basic types of informants: (1) the anonymous informant; (2) the identified citizen informant; and (3) the known informant (an actor in the criminal world who has previously provided reliable tips to law enforcement authorities). Id.

{¶23} In *Weisner*, the Ohio Supreme Court discussed the credibility to be given to an identified citizen tipster:

> The [United States Supreme Court] has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: '[l]f an unquestionably honest citizen comes forward with a report of criminal activity-which if fabricated would subject him to criminal liability-we have found

rigorous scrutiny of the basis of his knowledge unnecessary.' *Illinois v. Gates*, 462 U.S. at 233-234, 103 S.Ct. at 2329-2330, 76 L.Ed.2d at 545.

In light of these principles, federal courts have routinely credited the identified citizen informant with greater reliability. In *United States v. Pasquarille* (C.A. 6, 1994), 20 F .3d 682, 689, for instance, the Sixth Circuit presumed the report of a citizen informant to be reliable because it was based on firsthand observations as opposed to " 'idle rumor or irresponsible conjecture," ' *quoting United States v. Phillips* (C.A.5, 1984), 727 F.2d 392, 397. Likewise, the Tenth Circuit has held that the statement of an ordinary citizen witness is entitled to more credence than that of a known informant." ' Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen * * * in the position of a crime * * * witness." ' *Easton v. Boulder* (C.A.10, 1985), 776 F.2d 1441, 1449, *quoting LaFave, Search and Seizure* (1978) 586-587. *See, also, Edwards v. Cabrera* (C.A.7, 1995), 58 F.3d 290, 294.

Many Ohio appellate courts have also accorded the identified citizen witness higher credibility ... In *State v. Loop* (Mar. 14, 1994), Scioto App. No. 93CA2153, 1994 Ohio App. LEXIS 1126, 1994 WL 88041 ... the court held a telephone call from a citizen stating a motorist might be having a seizure was sufficient to justify an investigative stop that produced evidence of drunken driving. The court reasoned " '[i]nformation from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable." ' Id. at 5, *quoting State v. Carstensen*

(Dec. 18, 1991), Miami App. No. 91-CA-13, *301 at *4, 1991 Ohio App. LEXIS 6116, 1991 WL 270665 .... *See, also, Fairborn v. Adamson* (Nov. 17, 1987), Greene App. No. 87-CA-13, at 4-5, 1987 Ohio App. LEXIS 9664, 1987 WL 20264; *State v. Jackson* (Mar. 4, 1999), Montgomery App. No. 17226, at *5, 1999 Ohio App. LEXIS 847, 1999 WL 115010, observing generally " 'a tip from an identified citizen informant who is a victim or witnesses a crime is presumed reliable, particularly if the citizen relates his or her basis of knowledge,'" *quoting Centerville v. Gress* (June 19, 1998), Montgomery App. No. 16899, at *4-5, 1998 Ohio App. LEXIS 2694, 1998 WL 321014."

**{¶24}** *Weisner*, 87 Ohio St.3d at 300-301.

**{¶25}** As stated above, Detective King was responding to a 9-1-1 call alleging a domestic dispute between Appellant and her boyfriend, the caller. The boyfriend alleged Appellant had struck him, left the apartment with his keys and drove away. He also informed dispatch Appellant had been drinking. Det. King observed a vehicle matching the make, model and color description and initiated an investigatory stop.

**{¶26}** Based on the above information, we find Detective King had reasonable cause to stop Appellant.

**{¶27}** Once stopped, Det. King noticed an odor of alcohol coming from Appellant and she admitted to consuming alcohol earlier in the evening.

Impaired Driving Detention and Field Sobriety Tests

**{¶28}** A request made of a validly detained motorist to perform field sobriety tests is generally outside the scope of the original stop and must be separately justified by other

specific and articulable facts showing a reasonable basis for the request. *State v. Albaugh*, 2015-Ohio-3536, ¶ 18 (5th Dist.), quoting *State v. Anez*, 108 Ohio Misc.2d 18, 26-27, (2000).

{¶29} "Reasonable suspicion is "* * * something more than an inchoate or un-particularized suspicion or hunch, but less than the level of suspicion required for probable cause." *State v. Shepherd*, 122 Ohio App.3d 358 (2nd Dist. 1997). "A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Farey*, 2018-Ohio-1466, ¶ 23 (5th Dist.), citing *Village of Kirtland Hills v. Strogin*, 2006-Ohio-1450, ¶ 13 (6th Dist.) (internal citation omitted).

{¶30} In analyzing the facts presented, we are guided by the Supreme Court of Ohio in *State v. Batchili*, 2007-Ohio-2204, paragraph two of the syllabus:

"The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop."

{¶31} The intrusion on the drivers' liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion the driver is under the influence of alcohol in order to conduct a field sobriety test. *State v. Pierce*, 2024-Ohio-1560, ¶ 25 (5th Dist.); *State v. Toure*, 2023-Ohio-2559, ¶ 23 (5th Dist.); *State v. Knox*, 2006-Ohio-3039 (2nd Dist.). *See also State v. Bright*, 2010-Ohio-1111 (5th Dist.).

{¶32} Appellant argues Detective King did not observe the commission of any traffic violations. She further argues information relied upon by Detective King "was not based upon

facts that amounted to a reasonable suspicion of criminal activity" because she informed the other officer on the scene she had only consumed one margarita, no criminal activity had taken place, and her boyfriend just wanted his keys to his apartment back. (Appellant's brief at 10-11).

{¶33}  In finding reasonable and articulable suspicion existed for the impaired driving detention and field sobriety testing, the trial court found:

Det [sic] King testified, based on all of his observations, that the defendant was impaired. Det. King testified that he immediately detected an odor of alcoholic beverage on his initial interaction with the defendant and then he continued to smell it once the defendant exited the vehicle. He observed that the defendant was upset, crying and had blood shot, glassy eyes. He asked the defendant for her driver's license as the defendant explained that the parties were arguing. Det. King asked if the defendant had been drinking, and the defendant admitted to having a drink at dinner. Det [sic] King asked to see the defendant's license, and while looking for it, the defendant passed over her license two times. Det. King pointed out the license to the defendant on the third pass by the license in her stack of credit cards. Det. King testified that this showed impairment as she struggled with divided attention of trying to retrieve her license.

Det. King stated that he did not indicate for reasons of impairment that the defendant had bloodshot, glassy eyes because she was upset and crying, and it could have also been from crying. He also testified that he does not use strong

or weak odor of alcohol as it is a subjective standard just indicating that he immediately smelled alcohol. Det King stated that she was unsteady on her feet and her words were slurred.

Det. King stated that she was swaying, and he could understand the defendant but that some of her speech was slurred. Det. King's testimony was very honest, and he did not bolster his testimony that was evident by the above answers.

The Court finds that there was sufficient basis to detain the defendant for an OVI investigation based on Det. King's reasonable and articulable suspicion that the defendant was intoxicated based on the above reasons.

**{¶34}** (Sept. 11, 2025, Judgment Entry at 3).

**{¶35}** Here, as set forth above in more detail, Detective King observed the odor of alcohol coming from Appellant, she admitted to alcohol consumption, she had difficulty finding her driver's license, she was unsteady on her feet, was swaying, and was slurring her words. We find, viewing the totality of the circumstances through the eyes of a reasonable and prudent police officer, Det. King had a reasonable suspicion Appellant was driving under the influence and was justified in conducting standardized field sobriety tests.

{¶36} Based upon the foregoing, Appellant's assignments of error are overruled.

{¶37} The judgment of the Canton Municipal Court is affirmed.

{¶38} Costs to Appellant.


By: Hoffman, P.J.

Montgomery, J. and

Popham, J. concur.